IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:08cr190 (LMB) |
| | ) | 1:09cv439 (LMB) |
| SHEFUN GUY THOMPSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Before the Court is Shefun G. Thompson, Jr.'s pro se Petition Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody ["§ 2255 Motion"]. In his motion, Thompson raises five claims of ineffective assistance of counsel, arguing that his constitutional rights were violated by his counsel's performance during negotiations over his plea agreement, at the sentencing phase of his case, and for failing to file an appeal after being directed to do so. For the reasons stated below, all but one issue in this § 2255 Motion will be dismissed and Thompson will be ordered to supplement that remaining issue.

I.  **Background**

On May 28, 2008, pursuant to a written plea agreement, Thompson pled guilty to a single count indictment charging him with conspiracy to distribute five or more kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). At that hearing, Thompson was represented by appointed counsel, Michael S. Arif. At some point between the plea hearing and the sentencing hearing, Thompson became unhappy with the manner in which Mr.

Arif was representing him. On August 12, 2008, Thompson wrote a letter to the Court, asking for new counsel because he had become uncomfortable with Mr. Arif, who was not keeping in touch on a regular basis. (Docket No. 17.) By an Order dated August 19, 2008, the defendant's request was denied. At the August 29, 2008 sentencing hearing, Thompson, who was still represented by Mr. Arif, was sentenced to 135 months imprisonment with credit for time served and 5 years of supervised release, among other penalties. Thompson did not file an appeal of either his conviction or his sentence. On April 19, 2009, he timely filed this § 2255 Motion.

II. Discussion

A. Standard for Ineffective Assistance of Counsel Claims

To succeed on a claim for ineffective assistance of counsel, a movant must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). First, he must show that counsel's performance was "deficient." Id. at 687. Deficient performance is shown when "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." Id. at 690. However, counsel is "strongly presumed to have rendered adequate assistance." Id. Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When a defendant challenges a conviction resulting

from a guilty plea, Strickland's second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). Thompson bears the burden of proving both of these prongs.

B.  Thompson's Ineffective Assistance of Counsel Claims

1.  Failure to Remove the Waiver of Appeal Included in the Guilty Plea

Thompson complains that his attorney was ineffective because he failed to object to the waiver of appeal included in the plea agreement. Mot. Under § 2255 at 5. Without citing to any proper authority, Thompson argues that the waiver of appeal in the plea agreement establishes that Mr. Arif's performance was deficient because a waiver of appeal is unconstitutional. However, a waiver of appeal is not unconstitutional. See, e.g., United States v. Cohen, 459 F.3d 490, 493-95 (4th Cir. 2006).

In addition, the transcript of the Rule 11 plea colloquy shows that Thompson knowingly and voluntarily entered the plea agreement and was aware that it included a waiver of appeal. At the start of the plea colloquy, Thompson affirmed that he would answer the Court's questions truthfully. Plea Hr'g Tr. 4, May 28, 2008. He then told the Court that he was thirty-three years old, had completed one-and-a-half years of college after graduating from high school, and had no difficulty reading, writing, understanding, or speaking English. Plea Hr'g Tr. 5.

Thompson explained to the Court that his attorney brought him a copy of the plea agreement two or three weeks before the plea hearing and reviewed its contents with him. Plea Hr'g Tr. 12-15. Thompson also confirmed that he was aware of the terms of the plea agreement and was comfortable with them. Plea Hr'g Tr. 15.

Paragraph 6 of Thompson's plea agreement states in relevant part:

> The defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. <u>Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above</u> (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742, or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement.

Plea Agreement ¶ 6 (emphasis added). By signing the plea agreement on May 28, 2008, Thompson represented that he had read the agreement, reviewed "every part of it" with his attorney, understood it, and voluntarily agreed to it. Plea Agreement ¶ 14.

More significantly, during the plea colloquy, the Court specifically asked Thompson about the waiver of appeal that was included in his plea agreement. The following exchange took place:

> THE COURT: Normally a defendant in a criminal case has the right to appeal the sentence imposed on him, but if you look at paragraph 6 on page 5, the second sentence, beginning with the word "Nonetheless," as part of this plea agreement, you are giving up your right to appeal any sentence imposed in this case, with the one exception being if the sentence were greater than the

4

>    statutory maximum.
>         Now, the statutory maximum in this case again is life imprisonment followed by at least five years of supervised release and a fine of at least 4 million - I'm sorry, a fine of up to $4 million and a special assessment of $100. As long as the sentence is not greater than those limits, you can't appeal it. Do you understand that?
>
>    THE DEFENDANT: (Nodding head.)
>
>    THE COURT: And I know it sounds silly with a life sentence, and I don't blame you for smiling, but do you understand what I am saying?
>
>    THE DEFENDANT: Yes, Your Honor.

Plea Hr'g Tr. 21-22. This exchange shows that Thompson was aware that his plea agreement included a waiver of his appeal rights and that he did not object to that provision, despite being given the opportunity to do so. Furthermore, at the plea colloquy, Thompson was asked about whether he was "fully satisfied" with the way Mr. Arif represented him in the case. Plea Hr'g Tr. 27. Thompson responded that he was. Id.

Thompson has failed to show that Mr. Arif's performance was deficient because his plea agreement included a waiver of appeal. First, a waiver of appeal is not unconstitutional. Second, the record establishes that Thompson was aware he was waiving his appeal rights and agreed that the waiver was part of the plea bargain. Thompson also agreed that he was "fully satisfied" with Mr. Arif's representation of him in this case. A defendant is bound by the statements he makes under affirmation at the plea colloquy. See Beck v. Angelone, 261 F.3d 377, 395-96 (4th Cir. 2001); Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir.

1992). Thompson has presented no evidence to demonstrate that his representations at the plea colloquy were untruthful or involuntary. Accordingly, Thompson was not deprived of effective assistance of counsel when his attorney did not object to the waiver of appellate rights in the plea agreement.

2. Failure to File for Discovery

Thompson alleges that Mr. Arif's performance was deficient because he "never filed for either Discovery or Brady Material as these were absent from case even though Pet. had sought trial." Mot. Under § 2255 at 6. The docket sheet for Thompson's case confirms that Mr. Arif never filed for discovery. In this district, a discovery order is usually tendered when the defendant is arraigned. However, no discovery order was tendered in this case because Thompson pled guilty at his arraignment hearing.

By pleading guilty to the indictment, Thompson waived any objection to a lack of discovery, as he acknowledged during his plea colloquy.

> THE COURT: Now, if you went to trial you'd have certain protections at trial that you're basically giving up by pleading guilty. First of all, you could see the government's witnesses and physical evidence and test it through the questions of your lawyer. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> . . . .
>
> THE COURT: What you need to understand is that by

>   pleading guilty, you're giving up those various attacks on the prosecution's case. Do you understand that?
>
>   THE DEFENDANT: Yes, Your Honor.

Plea Hr'g Tr. 28-30. Furthermore, during his plea colloquy, Thompson acknowledged that he had told his attorney "everything he knew about the case" and had discussed the nature of the conspiracy charge and any way in which Thompson could defend against the charge. Plea Hr'g Tr. 27. At the close of the plea colloquy, Thompson also affirmed that he was "fully satisfied" with Mr. Arif's representation in this case. Id.

Lastly, Thompson has not described any evidence or Brady material his counsel failed to obtain, and most significantly, does not claim to be innocent of the cocaine conspiracy charge to which he pled guilty. In fact, Thompson's only real complaint about the adjudication in this case is the sentence he received. Because there is not a scintilla of evidence in this record that suggests Thompson was in anyway prejudiced by counsel not receiving discovery from the government, this claim will be dismissed.

3.  **Failure to Provide Legal and Factual Support for a Sentencing Departure**

Next, Thompson argues that he was deprived of effective assistance of counsel when Mr. Arif "failed to properly offer with case law and evidence, or witnesses data to merit a 5K2.0 Minor Role departure, otherwise prejudicing and exaggerating Pet.'s sentence." Mot. Under § 2255 at 5. The record does not

7

support this claim. Counsel did file a sentencing memorandum that argued in favor of a departure based on Thompson's minor role in the conspiracy, however, Thompson complains that the "lackluster" memorandum was "devoid of either case law or exact facts which would . . . help garner court departures for the accused." Mem. in Supp. 11-12.

The section of the defendant's sentencing memorandum dedicated to Thompson's role in the offense stated as follows:

> Mr. Thompson suggests to the Court that his role in the offense was not that of a leader, but, is better classified as either a _minor_ or _minimal_ participant. It is undisputed that Mr. Thompson followed, specifically, the directions of Yahya Watson in carrying out portions of the criminal enterprise. It is fair to say that Mr. Thompson did not have the connections, contacts, financial resources, initiative or frankly the criminal "know-how" to mastermind an operation such as that which Mr. Watson attempted to carry out.

Def. Sent. Mem. 2. In that memorandum, counsel also gave the Court three different ways to calculate the Sentencing Guidelines, each giving Thompson some level of role reduction.[1] Id. 2-3. Moreover, during his allocution, Mr. Arif argued again that his client played a minimal role in the conspiracy and urged the Court to apply a role reduction, stating:

> Mr. Thompson was not an aide-de-camp but was rather more of a messenger for Mr. Watson. If we look at the statement of facts that was admitted into the record, everything indicates that Mr. Thompson was acting at

---

[1] Counsel had to be very circumspect in even addressing the role issue because the parties had agreed in ¶ 5A of the Plea Agreement that neither side would ask for any role adjustment under U.S.S.G. §§ 3B1.1 or 3B1.2.

8

> Mr. Watson's behest, was his messenger. . . . There's no disputing that he was involved in the conspiracy, and there's no disputing the fact that he was profiting at some level, but I don't think to elevate him to an aide-de-camp from a mere mess sergeant is appropriate. . . . [H]e acted merely as the runner.

Sent. Hr'g Tr. 5, Aug. 29, 2008.

Given this clear evidence of counsel's efforts to obtain a role reduction, there is no basis upon which Thompson can argue that his counsel was ineffective. As the Fourth Circuit has recognized, "[s]tanding alone, unsuccessful . . . tactics neither constitute prejudice nor definitively prove ineffective assistance of counsel." Bell v. Evatt, 72 F.3r 421, 429 (4th Cir. 1995).

4. **Unwillingness to Challenge the Criminal History**

In Ground Five of his § 2255 Motion, Thompson states:

> Petitioner Thompson has since federal adjudication filed coram nobis proceedings in the State Of Maryland to examine and vacate previous, predicate convictions there . . . a procedure he requested Counsel Of Record to perform but he did not. Petitioner requests that his § 2255 action be held in abeyance until Md. State coram nobis results are forthcoming.

Mot. Under § 2255 at 6. In his memorandum, Thompson argues that Mr. Arif provided ineffective assistance because he failed to file coram nobis proceedings in Maryland after Thompson directed him to do so. Mem. in Supp. 19. Thompson claims that this failure violated his rights because he was exposed to a higher criminal history because of the Maryland convictions. Id. at 19-20. He states that he is "innocent" of his Criminal History Category and has initiated coram nobis proceedings in Maryland to

9

challenge his convictions as unconstitutional. Id. In his Memorandum, Thompson does not identify which of his several convictions he claims were unconstitutional or how his rights were violated, but requests that this § 2255 Motion be held in abeyance until the Maryland proceedings are complete.[2]

The Presentence Investigation Report ("PSR") prepared by the Probation Officer shows that Thompson had an extensive criminal history. The report reflects from 1998 to 2007 Thompson was sentenced in Maryland state courts for eleven separate offenses, six of which were drug-related. The numerous convictions resulted in Thompson being assigned a Criminal History Category III for purposes of calculating the Guideline Sentence. The Criminal History Category III and the offense level 31, which the parties agreed on, resulted in a recommended Guideline Sentence of 135 to 168 months imprisonment, among other penalties.[3]

As a general rule, convictions in state court may not be challenged during a federal sentencing. See Custis v. United States, 511 U.S. 485, 496-97 (1994). The only exception to this general rule is made for convictions that were obtained without

---

[2] On July 10, 2009, Thompson filed a pleading with this Court that appears to be a copy of a memorandum filed in a coram nobis proceeding in Maryland. The July 10, 2009 pleading, however, only appears to challenge his January 10, 2000 conviction for possession of a controlled substance and an accompanying probation violation. Even if Thompson were successful in having that conviction and sentence vacated, his Criminal History Category would remain a III.

[3] The statutory mandatory minimum for the offense was 120 months.

counsel. See id.; United States v. Bacon, 94 F.3d 158, 161-63 (4th Cir. 1996). Thompson does not allege in his § 2255 Motion that any of his state court convictions were obtained without counsel, and the PSR states that Thompson was represented by counsel in each of the offenses considered in determining his Criminal History Category. Lastly, Mr. Arif was appointed by this court to represent the defendant in this case. His appointment would not have extended to representing the defendant in Maryland. On this record, there is no basis upon which to find that counsel's performance was unreasonable.

In addition, at the sentencing hearing, Thompson himself did not object to the Maryland offenses being used to determine his Criminal History Category. Instead, when given the chance to allocute, he admitted he was guilty of the offense to which he had pled guilty and was aware of the sentencing guidelines:

> I admit I did some wrongs, and I broke the law, Your Honor, and I'm very sorry for my actions and take full responsibility for what I did. I definitely should have used better judgment in my situation, and if I could go back in time, I would definitely not be in this situation.
> . . .
> I know that there are sentencing guidelines in this case, but I also know that the Court and Your Honor have final discretion. . . .

Sent. Hr'g Tr. 6. There is simply no basis in this record to find that Mr. Arif's failure to attack the Criminal History calculation or to object to consideration of Thompson's state court convictions at the sentencing hearing constituted ineffective assistance.

11

Thompson asks the Court to hold his § 2255 Motion in abeyance until he has completed the coram nobis proceedings in Maryland. It is unnecessary to hold Thompson's § 2255 Motion in abeyance because the Supreme Court has held in Johnson v. United States that the AEDPA statute of limitations does not begin to run until the date the state sentence is vacated, if the defendant acted with "due diligence" in pursuing the state vacatur. See 544 U.S. 295, 308-310 (2005). Moreover, as discussed above, success in the Maryland proceedings would not change the resulting Criminal History in this case. Thus, the coram nobis matter is irrelevant.

5. **Failure to File an Appeal of the Sentence**

Lastly, Thompson contends that "[a]lthough I voiced my desire for Direct Appeal upon sentencing Counsel ignored my wishes and failed to file Notice of Appeal[,] thereby depriving me of basic . . . 6th Amend[ment] rights." Mot. Under § 2255 at 5. In his memorandum, Thompson asserts that "he did indeed request that counsel perform the filing of a Notice of Appeal, and hence Direct Appeal for his case." Mem. in Supp. 7. He also claims, without elaboration, that counsel informed him that no appeal was possible. Id. at 9. The only evidence offered to support his motion is Thompson's brief affidavit in which he submits, under penalty of perjury, that "I on several occasions did call and tell [my] lawyer Mr. Michael S. Arif that I do want to appeal." Aff. of Thompson ¶ 1. Thompson also avers that he

12

left several messages for Mr. Arif, but that Mr. Arif never responded to his request. Id. Lastly, Thompson avers that he never informed his attorney that he did not want to appeal. Id. at ¶ 2. However, Thompson does not aver exactly when he asked Mr. Arif to appeal, where that request was made, or how it was made.

In addition to the vagueness of Thompson's affidavit, the record strongly suggests that Thompson would not have asked his counsel to file a timely Notice of Appeal because the sentence imposed was at the low end of the guideline range which the parties had agreed to in the Plea Agreement. Moreover, Thompson's sentencing memorandum makes clear that he was hoping the government would file a Rule 35(b) motion to reduce his sentence. See Def. Sent. Mem. 1 ("[T]he Defendant anticipates the government will be filing a motion to reduce Mr. Thompson's sentence pursuant to Rule 35 of the Advisory Sentencing Guidelines subsequent to the sentencing date."). Filing a notice of appeal would have been a clear violation of the Plea Agreement and most likely would have eliminated any chance of a Rule 35(b) motion being filed. What probably happened in this case is that for some unknown reason, the government decided not to file a Rule 35(b) motion, and after that decision Thompson wanted to appeal.

The Fourth Circuit has held that an attorney who disregards a defendant's unequivocal instruction to file a timely notice of appeal is per se ineffective, even if the defendant has

13

waived his right to appeal, as Thompson did in his guilty plea. See Plea Agreement § 6 (waiving the right to appeal any sentence that was within the statutory maximum); United States v. Poindexter, 492 F.3d 263 (4th Cir. 2007). According to Poindexter, if a defendant avers that he directed his attorney to file a timely notice of appeal, but no notice was filed, the district court must then hold an evidentiary hearing to determine whether the defendant directed the attorney to file an appeal, even if the attorney has filed an affidavit contradicting the defendant's affidavit. See id. at 269-73.

On this record, however, Thompson has not averred exactly when he directed his counsel to file a notice of appeal. There is a strict ten-day time period in which to file a notice of appeal, which can be extended up to 30 additional days only if the defendant can show "excusable neglect" or "good cause" for the delay. See Fed. R. App. P. 4(b)(1)(A) & 4(b)(4). Thompson claims that "upon sentencing" he asked counsel to notice an appeal. However, as discussed above, that claim appears totally incredible given the lenient sentence the defendant received and his hope for a Rule 35(b) motion. Without a specific allegation of when, where, and how Thompson "instructed" counsel to file a notice of appeal, this issue cannot be resolved. For these reasons, this one claim will not be dismissed. Instead, Thompson will be allowed a chance to submit any additional evidence on the

issue of when, where, and how he instructed counsel to file an appeal. Any such evidence must be submitted within twenty (20) days and produced under the penalty of perjury.

III. Conclusion

For the reasons stated in this Memorandum Opinion, the Court will deny the request to hold this § 2255 Motion in abeyance and will dismiss it in all respects except for the issue concerning counsel's failure to file a notice of appeal. An appropriate Order will issue.

Entered this 5th day of August, 2009.

Alexandria, Virginia

/s/ *[signature]*
Leonie M. Brinkema
United States District Judge